**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| JEAN LABRANCHE and, ) | |
| MARIE LABRANCHE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 24-12190-MJJ |
| ) | |
| UNITED STATES LIBERTY INSURANCE ) | |
| COMPANY; KEVIN MICHAEL MURPHY; ) | |
| EVISTA FORENSICS, LLC; and ) | |
| ANDREW WILLIAMS d/b/a GAI ) | |
| ENGINEERING ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OF DECISION**

May 29, 2025

JOUN, D.J.

Plaintiffs Jean and Marie Labranche, ("Plaintiffs") brings this action against Defendants United States Liberty Insurance Company ("USLI"), Kevin Michael Murphy ("Murphy"), Envista Forensics, LLC ("Envista") and Andrew Williams d/b/a GAI Engineering ("Williams") (collectively, "Defendants") concerning the investigation and subsequent denial of insurance proceeds after a fire occurred in the basement of Plaintiffs' condominium. Plaintiffs allege: Violation of Mass. Gen. Laws ch. 93A (Count I), Interference with Contractual Relations (Count II), and Negligence (Count III) against all Defendants. [Doc. No. 1 at 19-23].

Defendants filed three separate motions. Defendant Williams moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to

1

Fed. R. Civ. P. 12(b)(6). Defendants Murphy and Envista, likewise seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), along with dismissal on the theories of claim-splitting and litigation privilege. Defendant USLI moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Defendants' Motions to Dismiss are <u>GRANTED</u>; Defendant USLI's Motion for Summary Judgment is <u>GRANTED</u>.

## I.    BACKGROUND

The following facts are taken from the Amended Complaint and its attachments, as well as records from related state court proceedings. *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020) ("[R]ecords from related state court proceedings fall within the public records exception," which allows a court from straying beyond the facts of a complaint.). I also take judicial notice of the Plaintiffs' multiple complaints filed in Suffolk Superior Court prior to removal. *See Guardado v. United States*, 76 F.4th 17, 24 (1st Cir. 2023).

On May 11, 2021, a fire occurred in the basement of 31 Nazing Street (the "Property"), Dorchester, Massachusetts. [Doc. No. 1 at 15, ¶ 12]. The Property is a two-family condominium dwelling in which Plaintiffs own and occupy the second floor unit. [*Id.* at ¶ 11]. The Boston Fire Department responded to the fire and subsequently issued a report concluding that the cause of the fire was "Unintentional," and factors contributing to ignition was identified as "heat source too close to combustibles." [*Id.* at ¶ 14; Doc. No. 6 at 138].

United States Liability Insurance Company issued a commercial policy to "Thirty-One Nazing Street Condo Trust," for the period of July 24, 2020, through July 24, 2021. [Doc. No. 6 at 19]. The policy includes a provision that states it will pay for direct physical loss or damage to covered property which includes "property contained within a unit, regardless of ownership" such as "[f]ixtures, improvements, and alterations that are part of the building or structure . . ."

[Doc. No. 1 at 14, ¶ 9]. On May 11, 2021, Plaintiff, through others, notified USLI of the damage to their unit and USLI set up a claim under Claim No. K161128. [*Id.* at 15, ¶ 13].

USLI conducted its own investigation to determine the cause and origin of the fire, in which the Boston Police and State Fire Marshall's Office participated. [Doc. No. 6 at 124]. Additionally, USLI retained Envista Forensics, LLC, and GAI Engineers to investigate the origin and cause. [*Id.* at 138, 143]. Fire scene examinations took place on three different dates. [*Id.* at 140]. Murphy investigated the scene on May 14, 2021, where he spoke with Plaintiff Jean LaBranche and examined both the interior and exterior of the building and the units. [*Id.* at 140]. A second fire scene exam was conducted on May 27, 2021, by Murphy and EFI Global Investigator Stephen Cunningham, where debris samples were collected and video footage from a neighbor showed two people exit the basement and get into a white SUV on the morning of the fire. [*Id.* at 142]. A third fire examination at the property was conducted on June 24, 2021. [*Id.*]. Those in attendance at this examination included: Murphy, Williams, Michael Peters from Liberty Mutual Insurance, Stephen Cunningham from EFI Global, Jay Kramarczyk from EFI Global, and Stephen King from Northeast Evidence. [*Id.* at 196–97].

At the last inspection, fourteen items of evidence were collected and stored at secure evidence facilities. [*Id.* at 240]. Counsel for Plaintiffs sent three letters to Murphy in the Summer of 2021 requesting information regarding who gave him permission to enter the property to conduct the three investigations. [*Id.* at 152–56]. The letters also requested information regarding the items that were removed for further analysis. [*Id.*]. In a letter to Plaintiffs, Defendants indicated an evidence log was provided to Plaintiffs, along with permission for Plaintiffs to retake possession of the items under the condition that Plaintiffs arrange for them to be held at a secure facility. [*Id.* at 240]. The letter also indicates that Plaintiffs were present along with

3

counsel for the inspection and testing of the removed items that took place at GAI Engineers facility. [*Id.* at 242]

On June 20, 2022, Williams issued his report which opined "[a]n intentionally created natural gas leak at the dwelling gas piping, by unthreading a pipe & cap from a reducing tee fitting in the basement utility room, was determined to be a significant contributing factor to the cause of the fire." [*Id.* at 247]. On August 31, 2022, Murphy issued his report which concluded "[t]he Cause Classification of the fire is Incendiary." [*Id*. at 150]. On December 16, 2022, USLI denied coverage as to Plaintiffs and reasoned that there was evidence of an incendiary fire in which Plaintiffs had "motive and opportunity."[1] [*Id.* at 132]. To support its denial, USLI cited to a provision of the insurance policy that stated USLI will not pay for loss or damage resulting from a "[d]ishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose . . . " [*Id.* at 131]. However, USLI reached an agreement with the first-floor owner relative to his individual condominium unit ownership interest and also tendered to him the agreed upon amount of loss for his percentage ownership interest in the common areas and facilities. [*Id.* at 123].

---

[1] The denial letter also stated:

> On June 8, 2021, USLI reported a False Loss statement to the Insurance Fraud Bureau of Massachusetts (IFS Referral #: 85401). The IFB acknowledged its report by letter dated July 30, 2021, and wrote that '[a]fter careful consideration and evaluation of the information provided to the Insurance Fraud Bureau of Massachusetts (IFB), it has been determined that sufficient evidence of criminal conduct exists which warrants further investigation.' A copy of this letter is attached at Exhibit A. Thereafter, the IFB opened Case #: 2021-07-081.

[Doc. No. 6 at 124].

On May 16, 2024, Plaintiffs issued a Demand Letter Pursuant to M.G.L. c. 93A to the Defendants. [*Id.* at 157–161]. On June 28, 2024, all Defendants rejected Plaintiffs' demand for relief. [*Id.* at 238–248]. Plaintiffs promptly filed suit.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their First Amended Complaint on July 17, 2024, in Suffolk Superior Court alleging Violations of Mass. Gen. Laws ch. 93A (Count I), Interference with Contractual Relations (Count II), and Negligence (Count III) against all defendants. [Doc. No. 1 at 11–26]. On August 23, 2024, USLI filed a Notice of Removal. [Doc. No. 1]. On September 30, 2024, Williams filed a Motion to Dismiss. [Doc. No. 7], to which on October 9, 2024, Plaintiffs filed an opposition. [Doc. 9]. On November 14, 2024, Murphy and Envista filed a Motion to Dismiss. [Doc No. 17]. Plaintiffs did not file an opposition. On February 28, 2025, USLI filed a Motion for Summary Judgment, which also is unopposed. [Doc. No. 20].

## III.    DEFENDANTS' MOTIONS TO DISMISS

### A.  Legal Standard 12(b)(6) Motion to Dismiss

In evaluating a motion to dismiss for failure to state a claim, a court must determine whether a complaint contains enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, courts "ignore[] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take[] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all

reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief."
*Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up).

Local Rule 7.1(B)(2) requires a party to file an opposition within 14 days after service of the motion. When a party fails to meet this deadline, "a court may consider the motion unopposed, or the opposition waived and allow the motion." *Latimore v. Trotman*, No. CV 14-13378-MBB, 2021 WL 5763009, at *1 (D. Mass. Dec. 3, 2021) (citing *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7-8 (1st Cir. 2002)). "The decision of whether to allow an unopposed motion, however, is within a court's discretion." *Latimore*, 2021 WL 5763009, at *2 (citing *Ramsdell v. Bowles*, 64 F.3d 5, 7 (1st Cir. 1995)).[2]

### B. Analysis

#### 1. M.G.L c. 93A Claim

Defendant Williams argues Plaintiffs not only failed to allege false and deceptive conduct by Williams or GAI, but also failed to identify with particularity any alleged false and deceptive conduct as required by Fed. R. Civ. P. 9(b). [Doc. No. 8 at 3–4]. Plaintiffs argue the Amended Complaint adequately plead such torts as "trespass" and "conversion." [Doc. No. 9 at 6]. Defendant Envista raises substantially the same argument as Williams. [Doc No. 17-1 at 12].

Massachusetts General Law ch. 93A, § 2 makes "unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. "To state a claim under the consumer protection statute, G. L. c. 93A, § 9, a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second,

---

[2] As noted, Plaintiffs failed to file an opposition to Defendants Envista and Murphy's Motion to Dismiss. Exercising this courts discretion, and in light of the strong preference for resolving matters on the merits, I decline to allow Defendants Envista and Murphy's Motions based solely on Plaintiffs' failure to file an opposition.

that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;'[3] third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury." *Rafferty v. Merck & Co.*, 479 Mass. 141, 161 (2018). In determining whether a practice violates Chapter 93A, courts look to "(1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005) (citing *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

"Trade or commerce refers to transactions in a business context, which in turn, is determined by the facts of each case . . . ." *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 849 (2017) (cleaned up). Factors the court considers when making this determination are "(1) the nature of the transaction, (2) the character of the parties and their activities, and (3) whether the transaction was motivated by business or personal reasons." *Id.* at 849–850. "Nonetheless, some business, commercial, or transactional relationship is required even for a claim brought under section 9." *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017).

---

[3] M.G.L. c. 93A § 1(b) defines "trade" and "commerce" as including:

> "advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

The Amended Complaint provides scant factual support for the first element. However, I need not scrutinize the first element as the Amended Complaint is devoid of allegations pertaining to the second element. Plaintiffs neither allege that the deceptive act or practice occurred in the conduct of trade or commerce, nor do they identify any "business, commercial, or transactional relationship." *Steinmetz,* 862 F.3d at 141. Plaintiffs simply allege that the Defendants "were engaged in trade or commerce" which "merely rehash[es] the cause-of-action elements*." Sonoiki.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up). The Amended Complaint merely "tenders naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, as Count I is not asserted against Kevin Murphy, Plaintiffs fail to adequately plead any form of vicarious liability necessary to hold Envista liable for Murphy's Conduct. *See Norris v. Glob. Tel Link Corp.*, No. CV 16-11323-LTS, 2016 WL 4574639, at *2 (D. Mass. Sept. 1, 2016) ("Without allegations supporting an agency relationship, the underpinning of a claim of vicarious liability . . . fails."). Further analysis is unwarranted. Count I is dismissed as to all Defendants for failure to state a claim.

### 2. Intentional Interference with Contractual Relations Claim

Defendant Williams argues the Intentional Interference with Contractual Relations ("IICR") claim fails because he was an "agent" for USLI, and therefore cannot be liable for interference with what is essentially his "own" contract. [Doc No. 8 at 5]. He further argues Plaintiffs fail to establish his conduct was improper in motive and means. [*Id.* at 6]. Plaintiffs fail to address this argument in their opposition. Defendants Envista and Murphy echo Williams' contention that Plaintiff failed to allege conduct that was improper in motive and means. [Doc 17-1 at 11].

"To state a claim for IICR under Massachusetts law, a plaintiff must show that (1) she had an advantageous relationship with a third party; (2) the defendant knowingly induced the third party to break the relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed as a result." *Cloutier v. City of Lowell*, No. 15-cv-12780, 2017 WL 11488633, at *31 (D. Mass. July 12, 2017); *see also Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016).

Under Massachusetts law, proof of an agency relationship is usually a question of fact for the jury. *White's Farm Dairy, Inc. v. De Laval Separator Co.*, 433 F.2d 63, 66 (1st Cir. 1970). "It is to be determined from all the evidence and reasonable inferences to be drawn therefrom." *Id.* If a Plaintiff pleads sufficient facts to support an agency relationship exists, a Court can recognize the relationship as true at the motion to dismiss stage. *See iNebular, Inc. v. Deutsche Bank Tr. Co. Americas*, 651 F. Supp. 3d 413, 419 (D. Mass. 2023). Here, Plaintiffs have not pled specific allegations to support a finding that Williams was an agent for USLI. The only reference in the Amended Complaint to support that such a relationship exists states "[t]he Defendant insurer and its representatives . . . ." [Doc. No. 1 at 16, ¶ 18]. Accordingly, the Amended Complaint does not meet the threshold for establishing an agency relationship.

Irrespective of the agency relationship, I agree with Defendants' contention that Plaintiffs have failed to establish that their conduct was improper in motive and means. The improper motive element of IICR requires actual malice such as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Wright v. Shriners Hospital for Crippled Children*, 412 Mass. 469, 476 (1992) (quoting *Sereni v. Star Sportswear Mfg. Corp.*, 24 Mass.App.Ct. 428, 433 (1987)). "Neither personal or financial gain, nor personal dislike, is enough to satisfy the improper motive requirement." *King v. Driscoll*, 418 Mass. 576, 587 (1994).

Here, while the Amended Complaint offers only marginal support for the first two elements of IICR, it fails entirely to plead the third element. The Amended Complaint alleges Murphy and Williams "knew or should have known that their actions, reports would be used to deny/ affect payment to the plaintiffs." [Doc. No. 1 at 22, ¶ 55]. The Amended Complaint further alleges that Murphy and Williams' conduct was "intentional, deliberate, and reckless" and that the "defendant's [*sic*] conduct substantially interfered with plaintiff's [*sic*] rights to recover under the subject policy provisions." [Doc. No. 1 at 22-23, ¶¶ 58-59]. The Amended Complaint fails as this Count contains mere conclusions of law and is void of any factual allegations suggesting any improper motive or means on the part of the Defendants. Absent such factual allegations, dismissal of Count II is warranted. *See Comeau v. Town of Webster, Mass.*, 881 F. Supp. 2d 177, 192 (D. Mass. 2012).

### 3.  Negligence Claim

Williams argues Count III of the Complaint must be dismissed because Plaintiffs fail to establish the existence of a legal duty. [Doc. No. 8 at 7]. Williams further emphasizes that Plaintiffs fail to properly allege a single element of negligence. [*Id.*] Plaintiffs do not directly respond to this argument in their opposition. Defendants Envista and Murphy invoke the economic loss doctrine as a basis for dismissal. [Doc. No. 17-1 at 9].

"To succeed on a claim for negligence under Massachusetts law, a plaintiff must show that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury and (4) the plaintiff suffered actual damage or injury." *Hale v. Pan Am Railways, Inc.*, 305 F. Supp. 3d 252, 256 (D. Mass. 2018). "Whether a duty of care exists is a question of law . . . and an appropriate subject of a motion to dismiss pursuant to rule 12(b)(6)." *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 40 (2009).

"Absent a duty of care, 'there can be no actionable negligence.'" *Hale v. Pan Am Railways*, *Inc.*, 305 F. Supp. 3d 252, 256 (D. Mass. 2018) (quoting *Dhimos v. Cormier*, 400 Mass. 504, 507 (1987).

I agree with Williams that Plaintiffs allegations fail to establish the existence of a legal duty of care. The Amended Complaint is void of any facts that would allow the Court to determine if Williams owed a duty to Plaintiffs. The Complaint alleges Kevin Murphy admitted during deposition testimony that "he had an obligation to conduct an objective and fair investigation that was free of any bias or prejudice." [Doc. No. 1 at 16, ¶ 17]. Notwithstanding this assertion, Plaintiffs are silent as to Williams. Plaintiffs fail to provide basic facts as to Williams' role in the investigation and the nature of the relationship between Williams and Plaintiffs. Moreover, Plaintiffs fail to plausibly allege Williams owed them a duty, much less how any duty of reasonable care was breached. *See Hale*, 305 F. Supp. 3d at 256. Accordingly, because Plaintiffs fail to articulate a plausible entitlement to relief, Count III is dismissed as to Defendant Murphy.

I further agree with Defendants Envista and Murphy that the economic loss doctrine bars recovery as to Plaintiffs' negligence claim. In Massachusetts, it is settled law that "purely economic losses are unrecoverable in tort . . . in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993). Here, Plaintiffs' Amended Complaint fails to allege personal injury or property damage. Plaintiffs merely allege that the Defendants "removed evidence, contents, and building property without advance notice and/ or permission from the plaintiffs." [Doc 1 at 17, ¶ 23]. The Amended Complaint fails to identify what property was removed or damaged during the process. Even when accepting the facts as true and viewing those facts in the light most favorable to the Plaintiffs, the allegation

more appropriately resembles a claim for conversion rather than a claim for property damage due to negligence.

Defendants Envista and Murphy go on to argue that the exception to the economic loss doctrine does not apply because Plaintiffs failed to allege negligent misrepresentation. [Doc. No. 17-1 at 14]. "Massachusetts law recognizes an exception to the economic loss doctrine for economic losses resulting from negligent misrepresentations." *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F. Supp. 2d 140, 147 (D. Mass. 2003) (citing *Nota Constr. Corp. v. Keyes Assoc.*, 45 Mass.App.Ct. 15 (1998)). "In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *Nota Const. Corp.*,45 Mass. App. Ct. at 19–20.

While the Amended Complaint states, "Kevin Murphy made false, deceptive, and/or misleading statements in his report," it fails to advance any additional facts sufficient to state a claim for negligent misrepresentation. "A complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which such claim rests." *Superior Kitchen Designs, Inc.*, 263 F. Supp. 2d at 148; *see also* Fed. R. Civ. P. 8. If Plaintiffs believed they had a viable claim for negligent misrepresentation, they should have alleged it as a separate Count and provided adequate factual support. "The court will not read causes of action into the complaint which are not alleged." *Superior Kitchen Designs, Inc.*, 263 F. Supp. 2d at 148. Therefore, Count III is also dismissed as to Defendants Envista and Murphy.

IV.    **USLI'S MOTION FOR SUMMARY JUDGMENT**

A.    <u>**Facts and Procedural History**</u>

Turning now to USLI's Motion for Summary Judgment, to aid the analysis, I briefly summarize further relevant facts taken from USLI's Statement of Undisputed Facts.[4] The first lawsuit ("Lawsuit 1") regarding this incident was filed by Plaintiffs in Suffolk Superior Court on December 29, 2021, No. 2184-cv-02939, naming only "Liberty Mutual Insurance Company d/b/a American States Insurance Company" as a Defendant. [Dkt. No. 2184-cv-02939, Suffolk Superior Court]. The parties stipulated to a dismissal for reasons unknown to this Court on August 1, 2023. [*Id*.].

On May 8, 2023, Plaintiffs filed their second lawsuit ("Lawsuit 2") regarding this incident in Suffolk Superior Court. [Doc. No. 22 ¶ 18]. Lawsuit 2 named "United States Liability Insurance Company and 31 Nazing Street Condominium Trust Necessary and Indispensable Party" as Defendants. [*Id*.]. Plaintiffs Amended their Complaint in Lawsuit 2 on June 1, 2023. [*Id*. at ¶ 20]. The Plaintiffs asserted claims of Breach of Contract (Count I), Unjust Enrichment (Count II), Defamation Per Se (Count III), Defamation (Count IV), and Negligence (Count V). [*Id*. at ¶ 20]. Lawsuit 2 was removed to this Court on July 7, 2023, and docketed as 23-cv-11456.[5]  [*Id*. at ¶ 22].

On September 8, 2023, I issued an amended scheduling order in Lawsuit 2, setting the deadline for Amendments to Pleadings for September 22, 2023. [*Id*. at ¶ 24]. Notably, prior to

---

[4] The Court also takes judicial notice where appropriate from proceedings in Suffolk Superior Court. *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

[5] Lawsuit 2 was subsequently consolidated with case 1:23-vc-11192, captioned *Richard Morris MD, Trustee of 31 Nazing Street Condominium Trust v. United States Liability Insurance Company*. [Doc. No. 22 ¶ 23].

the issuing of the Amended Scheduling Order, Plaintiffs had already deposed Caesar Camacho[6] and received both Murphy and Williams' investigative reports along with a copy of the evidence log of the items removed from the property for analysis. [Doc. No. 17-3 at 522; Doc. No. 17-2 at 195–331]. Plaintiffs chose not to amend. [Doc. No. 22 at 6].

On July 18, 2024, Plaintiffs filed a third lawsuit ("Lawsuit 3") in Suffolk Superior Court, No. 0284-cv-01884, naming United States Liability Company, Kevin Michael Murphy, Envista Forensics, LLC, and Andrew Williams d/b/a GAI Engineering as Defendants. [Doc. No. 1 at 13]. The Complaint alleges violations of M.G.L. ch. 93A (Count I), Interference with Contractual Relations (Count II), and Negligence (Count III.). [*Id.*] On August 23, 2024, Lawsuit 3 was removed to this Court and docketed as 24-cv-12190, which is currently before me on this motion.

### B.  Legal Standard Rule 56

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Generally, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "To succeed, the moving party must show that there

---

[6] Caesar Camacho is the owner of the property in which investigators retrieved footage from his security cameras that allegedly depict two individuals leaving the property where the fire occurred just prior to the incident.

is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). Once it has made the requisite showing, the burden shifts to the nonmovant to "present definite, competent evidence to rebut the motion" and demonstrate that a "trialworthy issue persists." *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (internal citations and quotations omitted). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505).

If a Plaintiff fails to file a timely opposition to a motion for summary judgment, the Court treats the Defendant's motion as unopposed and "deems admitted the facts set forth in Defendant's Statement of Undisputed Material Facts.[7] *See Ferreira v. Mortg. Elec. Registration Sys., Inc.,* 794 F. Supp. 2d 297, 301 (D. Mass. 2011). While the motion is unopposed, the Court must still consider whether the moving party is entitled to summary judgment on the merits. *Cordi–Allen v. Halloran*, 470 F.3d 25, 28 (1st Cir.2006). "In most cases, however, 'a party's failure to oppose summary judgment is fatal to its case.'" *Ferreira*, 794 F. Supp. 2d at 301 (quoting *Perez–Cordero v. Wal–Mart P.R.*, 440 F.3d 531, 533–34 (1st Cir.2006).

### C.  Analysis

#### 1.  Doctrine of Claim Splitting

USLI argues it is entitled to summary judgment pursuant to the claims splitting doctrine. Specifically, USLI argues that Plaintiffs filed a prior lawsuit comprised of the same nucleus of

---

[7] Local Rule 56.1 provides that: "Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."

facts that is currently pending before this court contemporaneously with this matter. Plaintiffs did not file an opposition to USLI's motion.

Early First Circuit case law describes the claim-splitting doctrine as "one application of the general doctrine of res judicata." *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 852 (1st Cir. 1947). More recently, courts have viewed the doctrine as one of "docket management." *See Conservation L. Found., Inc. v. Longwood Venues & Destinations, Inc.*, 415 F. Supp. 3d 240, 242 (D. Mass. 2019) (citing 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4406 (3d ed. 1998). The Tenth Circuit has provided an articulation of "the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011).

"[A]s a general proposition, parties are not permitted to engage in claim-splitting: that is, parties are generally not permitted to bring new actions based on claims that could have been asserted in the earlier action but were not." *Salvati v. Fireman's Fund Ins. Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019). The doctrine essentially prevents a party from bringing a subsequent lawsuit where it "had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010). One notable exception to the rule against claim splitting is where "the evidence on which the second action is based was not reasonably discoverable during the pendency of the first action." *Salvi*, 368 F. Supp. 3d at 92 (citing *Havercombe v. Dep't of Educ. of the Commonwealth of P.R.*, 250 F.3d 1, 8 n.9 (1st Cir. 2001).

Applying the foregoing principles, I now must determine if "the causes of action asserted in the earlier and later suits are sufficiently identical or related," and whether "the parties in the

16

two suits are sufficiently identical or closely related."[8] *Salvi*, 368 F. Supp. 3d at 9. The First Circuit has adopted a transactional approach to determine whether causes of action are sufficiently related." *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998). "This boils down to whether the causes of action arise out of a common nucleus of operative facts." *Id.* The inquiry is "whether the facts are related in time, space, origin, or motivation." *Id.*

Here, the claims in Lawsuit 2 and Lawsuit 3 undisputedly arise out of a common nucleus of operative facts. Both lawsuits stem from a fire that occurred on May 11, 2021, in the basement of the property located at 31 Nazing Street in Dorchester Massachusetts. Similarly, both lawsuits are motivated by USLI's denial of insurance coverage. Lawsuit two simply changes the causes of action and adds new parties as Defendants. Although Plaintiffs "dress [their claims] in different legal raiment, the conduct that underbraces the two sets of claims is strikingly similar in time, space, origin, and motivation." *Id.*

Further, the exception to claim splitting regarding evidence that was not reasonably available in the Lawsuit 2 does not apply. Plaintiffs received a letter from USLI's counsel on December 16, 2022, informing them of the denial of coverage and attaching both William's and Murphy's reports. Plaintiffs then deposed Caesar Camacho on March 13, 2023, which is approximately two months prior to filing Lawsuit 2 and over a year before filing Lawsuit 3. In

---

[8] The First Circuit has interpreted the Supreme Court's ruling in *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001), to signify the use of state law when a Federal Court is confronted with a claim preclusion issue regarding "successive diversity actions." *See Hatch v. Trail King Industries, Inc.*, 699 F.3d 38 (1st Cir. 2012). Contrastingly, the SJC has announced "[w]hen a State court is faced with the issue of determining the preclusive effect of a Federal court's judgment, it is the Federal law of res judicata which must be examined." *Anderson v. Phoenix Investment Counsel of Boston, Inc.*, 387 Mass. 444, 449, 440 N.E.2d 1164 (1982). As *Anderson* predates *Semtek*, the SJC has not clarified whether the rule survives. *Hatch*, 699 F.3d at 44-45. Because Massachusetts and federal common law apply the same factors to decide questions of claim preclusion, the Court will apply federal law of claim preclusion just as other sessions in this Court have previously done. *See Salvi*, 368 F. Supp. 3d at 90.

the same vein, Plaintiffs chose not to seek leave to Amend Lawsuit 2 after the September 8, 2023, scheduling order issued, and instead just filed another lawsuit. The doctrine was established precisely to preclude this type of conduct. *Airframe Sys., Inc.,* 601 F.3d at 14.

The second part of the analysis regarding the identity of the parties requires minimal examination. Plaintiffs clearly name "United States Liability Insurance Company" as a Defendant in both suits. No additional examination is necessary. Plaintiffs made a number of strategic choices and the doctrine of claim splitting, along with the principles of claim preclusion, requires them to live with those choices.

## V.    CONCLUSION

For the foregoing reasons, Defendants Williams, Murphy, and Envista's Motion to Dismiss is <u>GRANTED</u>. Defendant USLI's Motion for Summary Judgment is <u>GRANTED</u>.


SO ORDERED.

/s/ Myong J. Joun_____
United States District Judge
